IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

Gbeke M. Awala,
William G. Awala,
Nancy Rivard Awala, et al.
  Plaintiffs,

Civ. No. 08-400

v.

International Court of Justice (ICJ),
U.S. Department of Treasury,
U.S. Department of Defense,
Nigerian High Court,
Nigerian President Olusegun Obasanjo,
the Incumbent (President Musa Yaradua),
Nigerian Security Advisor, Nigerian Embassy in U.S.,
U.S. Embassy, Nigeria,
U.S. Attorney General, Michael B. Mukasey,
U.S. Attorney's Office, District of Delaware,
Colm F. Connolly, and President George W. Bush,
Central Bank of Nigeria,
First Bank of Nigeria, Canadian Banks,
American Banks, British Banks,
Swiss Banks, and German Banks,
  Defendants.

FILED 2008 JUL -1 PM 3:29 CLERK U.S. DISTRICT COURT DISTRICT OF DELAWARE

(A).   CLASS ACTION CIVIL

Comes Now, Gbeke M. Awala, in this cause of action as Plaintiffs, heirs and beneficiaries, Seeking Common relief, for bringing action under Fed. R. Civ. P. Rule 23(a)(3), and adequately representing members of Class, undoubtedly Intervening, to obtain a Judgment against the defendants and Submits a Mandato

Condition for Certifying the action, as a class action on a limited fund theory under Fed. R. Civ. R. 23(b)(1)(B), a proposed action represented by Gbeke M. Awala, for the AWALA, BROWN, HIME, EJECHI, ADELAJA's, Claims, and in an attempt to refrain from repetious claims and to device efficient deployment of the Court's resources and the ability to Consolidate the Claim, the defendants, may not and should not be permitted to engage in prolonged Combat over the requirement of Rule 23.

Plaintiffs, Gbeke M. Awala's personal Stake in the damages is $421 million, no Competent attorney would undertake this 5,000 persons Complex GENOCIDE action, a Class action to recover so Inconsequential amount. Thus, economic reality dictates that this action must proceed as a Class. See Yang v. Odom, 392 F.3d 97 (3rd Cir. 2004); American Pipe & Construction Co v. Utah, 414 US 538 (1974); Ortiz v. Fibbreboard Corp, 144 LED 2d 715; Eisen v. Carlisle & Jacquelin, 40 LED 2d 732. Accordingly, the District Court under Justification for Certification as a Class action must Consider Gbeke's adequacy to represent the Interest of his families been Murdered by part of the Defendants above, addressing any Conflicting Interest, by Looking Into the Labyrinthian history of this Genocide damages Claim and under a Preliminary overview of the decision the Court Can procure. See Deuteronomy 5:17 'You Shall not Kill.'

(B.)     PETITION TO PROCEED IN FORMA PAUPERIS.

Plaintiff, Gbeke M. Awala, where a class Certification as been granted, and/or on the basis of Imminent danger of Physical Injury, death, threats of Injury and other premeditated Killing Instituted against him, seeks to be excused under

-2-

the restrictions pursuant to Sec. 1915(a), Abdul-Akbar v. Mckelvie, 239 F.3d 307, 311 (3d Cir. 2001), to be exempted under the "three strikes" restriction, at the time of filing his Complaint, Plaintiff is under the "Imminent danger of Physical Injury. Gideon v. Wainwright, 372 U.S. 335 (1963), held that Paupers have been an important-and-valued-part of the Court's docket, Plaintiff, Gbeke M. Awala, and others Mortal Plaintiffs, Showing that we come within the statutory requirement of 28 USC §1915, to proceed in this Civil Rights Action, without prepayment of $350.00 Filing Fee. As a result the leave to proceed In forma pauperis should be granted. Notwithstanding, In this kind of Case, in the Compulsory Subject matter Jurisdiction of ... imminent. See (ICJ's) Optional Protocol Concerning the Compulsory Settlement of Disputes (Optional Protocol or Protocol), Art. I., Apr. 24, 1963, 1970, 21 U.S.T. 325, 326 T.I.A.S. No. 6820. Accordingly, the Court must grant Pauper.

---

(C). JURISDICTION OF THE COURT

Plaintiffs, Gbeke M. Awala, brings forth this action, to redress in part the defendants eyes and hearts, set on dishonest gain, on shedding innocent blood and on oppression and extortion, with respects to universally accepted norms of International Law and domestic laws in the proscription against genocide, and war crime, as a result, because customary

-3-

International law is created by the general customs and practices of <u>nations</u> and therefore does not stem from any single, definitive, readily-identifiable source, the <u>district Court</u>, in judging the sufficiency of jurisdictional attributes to prosecute these <u>defendants</u>, including, <u>International</u> Court of Justice (ICJ), the Court must exercise <u>extraordinary Case</u> and restraint in deciding whether an offense will violate a customary norm. See <u>Vietnam Ass'n For Victims of Agent Orange v. Dow Chem</u>. 517 F.3d 104 (2007).

1. <u>SUBJECT MATTER JURISDICTION - ALIEN TORT CLAIMS 28 U.S.C. Sec. 1350.</u>

Plaintiff asserts for the merits, so that the district Court may properly rule on all <u>variety of factors</u> in determining Subject matter Jurisdiction: (1) Place of the <u>Genocide</u>, deaths and injury (2) the <u>allegiance</u> or the domicile of some of the <u>deceased</u> and <u>families</u> (3) the allegiance or the domicile of the representatives, <u>Gbeke M. Awala's</u> direct families. (4) and findings that all factors <u>suggested</u> a <u>sufficient</u> ties to the <u>United States</u>, Canada, Nigeria and England; and that it is appropriate for this Court to exercise the appropriate Jurisdiction.

Moreover, the <u>points of Contact</u> of this dispute, that resulted into <u>Genocide</u>, known as <u>American-Nigerian Genocide</u> of the <u>AWALA's</u> amongst others, are maximum within the U.S. Government, and that the factors <u>argue</u> in favor of Jurisdiction and damages to the heirs and beneficiary, in this

-- 4 --

class action. The U.S. Agents working on the defendants behalf, had irrefutable contact with the United States, on account of Gbeke M. Awala, unalienable and inherent Claims of Birth in Miami-Dade, County, Florida, in the United States, the accessibility of the Nigerian Security Adviser, the Nigerian Police and Insurgents military officers, at the call of both nations forum, on their basis of operations, having a sufficient point of contact, to establish the Genocide herewith alleged an arbitrary, Capricious and Repugnant wrongful Conduct.

2. The Subject matter jurisdiction is invoked under 42 U.S.C. 1983, 1985 and 1986, the Substantive Due process, is invoked under the Fifth and Fourteenth Amendment, U.S. Constitution, although Letters rogatory are an important and indeed, historic part of International litigation, such a process has been recognize a time Consuming. See BFI Group Divino Corp v. JSC Russian Aluminium (2nd Cir. 2007). 481 F Supp. 2d 274.

In view of the premises of Death tolls, in Florida, New York, Chicago, Missouri, Canada, Ghana and Nigeria, availability of Compulsory process for witnesses are here through the Defendants representatives, and a means inexpensive and but expenditures to create a Collateral estoppel of persons found to have participated and assisted in persecution on Genocide prong; and by several Corruption of the Nigerian officials. Plaintiff must be permitted to Sue the United States, because said nations Sovereign

-5-

Immunity is <u>waived</u>, and Construed in favor of the Plaintiffs. <u>See 28 U.S.C. §1346(b)</u> District Court Shall have <u>exclusive Jurisdiction</u> of civil actions on Claims against the <u>United States</u>, for <u>money damages</u>, for Injury or loss of property, death caused by the negligent or wrongful act or omission of any employee of the Government while acting in the Scope of his office. See <u>Schaick v. United States</u>, (1983) 586 F.Supp. 1023.

3.    <u>28 U.S.C. §1331</u>, neither §1331 nor the Constitution waive the Sovereign Immunity of the United States. However, <u>Sufficient ties</u> of the United States to the Genocide and death of over 5,000 persons clearly suggest that the U.S. Government has <u>waived</u> the Sovereign Immunity and <u>Consented</u> to this Suit. As it appears that Plaintiffs, Gbeke M. Awala's family and others are been killed and put through the <u>torture</u> he is enduring was a predicate of the <u>Corrupt</u> function of the U.S. Attorney General, Michael B. Mukasey and U.S. Attorney, Colm F. Connolly, Districts of Delaware, liabilities for damages in a §1983 action, not based on vicarious liability doctrines. See <u>Monell v. Dept' of Social Servs</u>, 436 U.S. 658, 691 (1978); <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430 (1976), associated with <u>Genocide Conducts</u> Committed under <u>Judicial Phase</u> of Criminal process, to force the surrender of Plaintiff. Gbeke's Birth right to United States. See also <u>Bivens v. Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388, 394 (1971). These Officials have <u>Consented</u> to the Suit.

-6-

Moreover, Nigerian High Court are Incompetent. See Yusuf Ahmed Alghanim & Sons v. Toys "R" US, Inc, 126 F.3d 15, 20 (2d Cir. 1997); Volt Information Sciences, Inc, v. Board of Trustees, 489 US 468 (1989); See also Baker Marine, Ltd v. Chevron, Ltd, 191 F.3d 194 (1998) (2nd Cir).

Consequently, the U.S. Constitution allocates "the foreign relations power" to the federal government and vests the authority to decide what the nations foreign policy should be in the executive branch. See American Ins. Ass'n v. Garamendi, 539 US 396 (2003), 539 U.S. at 413-14. The executive has authority to enter into treaties and "executive agreement" with foreign governments, Includings agreements that resolves the Genocide claims at issue and claims of American Citizen. Id. at 415. See also Deutsch v. Turner Corp, 324 F.3d 692 (9th Cir. 2003). Under the Supremacy Clause, treaties and executive agreements resolving wartime claims preempt state laws that have "more than incidental effect in conflict with the express foreign policy of the National Government". Thus, It is believed that the defendant Nigerian High Court Laws must give way, Since evidence is clear of conflict with Laws yield under the International Compact or agreement for preventing Crimes of Genocide, Committed by them in a land that run a foul of the Convention on the prevention and Punishment of the Crime of Genocide. See

- 7 -

Kadic v. Karadzic, 70 F.3d 232 (1995).

4. In this Jurisdictional Statement, Plaintiff, Gbeke M Awala, Criticizes the International Court of Justices, Interpreting and application of the Vienna Convention on Consular Relations, which at all times relevant has failed to move a Judgment against the Federal Republic of Nigeria, the President Olusegun Obasanjo, his Incumbent, President Musa Yaradua, to reexamine Certain Nigerian failed human Right Laws they have not Signed and ratified any series of grossly disproportionate abuse of persons Including Genocide of families as in the Awala, Case. See Foster v. Neilson, 27 U.S. 253, 2 Pet 253, 314 (1829). A binding force between Parties and has determined by President George W. Bush in an opinion filed under Medellin v. Texas, 128 S. Ct. 1346 (2007), the President determined that domestic Courts should enforce this particular Judgment. See also Memo to the Attorney General (Feb. 28, 2005). App. to Pet. for Cert. 187(a). "I believe the treaty obligations, and hence the Judgment, resting as it does upon the Consents of the United States to ICJ's Jurisdiction, binding the Courts no less than would an act of the federal Legislature. Foster, 27 U.S. 253, 2 Pet. 1t 314. Accordingly, the defendants are signatory, and failed to exercise In Conformity with the laws and regulations of the Vienna Convention and all Protocols. This Court has Jurisdiction to hear this Case.

-8-

(D). <u>The Complaint Statement and Issues</u>

Plaintiffs, <u>Gbeke M. Awala</u>, William Awala, Nancy Rivard, (Son + mother) + adopted mother Dopo Awala, and biological (Father Moses Hime Awala, mother Dorcas C Brown), where it is <u>apparent on the face</u> of the Pleading that the Plaintiffs are <u>not barred by Statute of limitation</u> from the allegations of this Complaint, Settling Claims against these defendants, Acts of <u>direct Involvement</u> with, knowledge of, or responsibilities for <u>GENOCIDE</u>, essentially to the aftermath of hostilities and a particular longstanding practice of the U.S Government to sweep the AWALA, Inc. Ethnic group and families. The following factual allegation must be accepted as true and having a <u>Cognizable legal theory</u>. See <u>Bell Atlantic Corp v. Twombly</u>, 127 S. Ct. 1955, 1965 (2007).

I, <u>Gbeke M. Awala</u>, representing myself and member Classes of the <u>Awala's, Brown, Egechi, Adelaye</u> and other relatives Saturated in Florida, Chicago, New York, Canada, England and Nigeria, and Ghana, on the basis of the <u>Substantial difficulties faced</u> Seeking the Recovery of the <u>U.S. Agents Stolen Florida Birth Documents</u> belonging to <u>Gbeke</u> and <u>St</u> other family genealogies, In this proceedings, Since August 2004. See <u>United States v. Awala</u>, 04-901-KAJ (Del 2005) Appeal no. 05-5479. An unreasonable reason for <u>genocide</u> was prompted by the <u>U.S. Government</u>, who,

-9-

had funded the defendants <u>President Obsegun Obasanjo</u>, and his <u>National Security adviser, Aliyu Gusau</u> to, assign <u>Insurgents</u>, under the <u>Nigerian Military Regime</u>, and they began to cleanse the country of all and any persons known by 'AWALA's, related to AWALA's friends with the AWALA's and several other <u>Inhabitants</u> in Lagos, Warri and Ghana, the efforts took them to <u>abduct and kidnapped</u> my son William Awala, from Canada, his mother Nancy Rivard, and my adopted mother Dapo Awala, In <u>Cold blooded killings</u> and forced others to forced deportations. Plaintiff asserts that with the onset of the Genocide, the Government of Nigeria and the U.S. Embassy in Nigeria, launched an <u>Interrogation Campaign</u> of the AWALA's, on account of <u>Gbeke Awala</u>,' claims of unalienable and Inherent <u>birthright in America</u>. Through a process of Surprise, kidnapped other families, articulated above, from New York, Florida, Chicago, Canada, England, and <u>killed some</u>, and Transported many by <u>Military Aircraft</u> to Nigeria, through a Cold blooded process of <u>Massacre</u>, recognized as <u>American-Nigerian genocide</u>, thus, between August 2004, while in custody of the <u>Federal Bureau of Prison</u>, Gbeke M. <u>Awala's families</u>, friends and companions, estimated at <u>5,000 persons</u>, including some Inmates legal works are done for are <u>killed</u>, and ninety percent of those displaced and deported to other African countries or perished. Additionally, the American-Nigerian Government <u>Genocide</u>, forces a fraudulent Concealment of <u>assets</u> and

-10-

approved transfer of ownership to those Police/military men, shared amongst themselves, several Homes, Lands, monies, Golds, diamonds, Cars, Trucks, Businesses, and other valuables, owned to the Awala's, Brown, Hina, Gechi, Adelaja and others. Said Authorities, issued secret orders, that all said assets are to be considered abandoned properties, the Nigerian Commission of Police said, several Bank Accounts, Thus, operated within the Defendants, U.S. Government officials, the looting methods and liquidation used.

Many of these Financial Institutions listed above, anonotedly, yet known were directed to transfer Awala's assets in their own individual names, for possession, and the inventory of such commission includes lands, bank deposits, and goods found in homes, churches, monasteries, and schools— secured under their ownership and control of which the empire is estimated at $1 Billion in U.S. Americas. Which the defendants looted.

Plaintiff brings this action to recover on our behalf, and on behalf of similarly situated individuals, and the general public, to recover money and property purportedly withheld by the defendants during this American-Nigerian Genocide. Plaintiffs Gbeke M. Awala, alleged, that we are the "rightful heirs" of that money and property and seek recovery of all deposited assets not returned, a full accounting, and disgorgement by the defendants, Swiss Banks, American Banks,

-11-

German Banks, First Bank of Nigeria, Central Bank of Nigeria, Canadian Banks and British Banks. Plaintiff also seek the return of all looted assets received by the Defendants Agents, a pattern of expropriation, breach of special duty, conversion, unjust enrichment, negligence, constructive trust, money had and received for accounting. Accordingly, I, Gbeke M. Awala, cannot turn away from the weeping bitterly, and yet not consoled over the destruction of my people, a ties sufficiently linked with the President of the United States, President George W. Bush, the Attorney General Michael B. Mukasey, and a failure under the U.S. Department of Defense, since August 2004, cause sufficiently to toll the limitation period and allow the pleading of facts that would support the collateral estoppel of the Defendants, former Nigerian President Olusegun Obasanjo, present or incumbent President Musa Yaradua, Nigeria Security Advisor, Nigerian Embassy in United States, and all those Naturalized Citizens and Aliens, funded by U.S. Government and by provision of sophisticated weaponry killed over 5,000 persons, by genocide. The activities generated enormous profits to these Agents and since the beginning of said genocide, the Banks have been affirmatively and actively concealing the existence of accounts held on those names above to Awala's, they looted assets and

-12-

deliberately obstructed efforts to <u>Identify</u> the <u>accounts</u> and transfer of those assets to the rightful heirs and beneficiaries, <u>from American Banks</u>. Substantial difficulties faced by Awala, <u>delayed</u> discovery, In addition seeking the recovery of "<u>looted assets</u>" by Nigerian-American <u>genocide</u>, to Transfer to the Victims, whose Survivors reside In <u>New York</u>, Florida, Missouri, Canada, Britain, Ghana, Nigeria. The Nigerian <u>Banks</u> during the <u>genocide</u> actively Concealed and denied existence of <u>several assets</u> and an equitable relief, Injunction, Collateral estoppel is warranted. See <u>Deiiiminyan v. Deiiiniin Bank, AG Ciii77.</u>

As this Complaint is asserted in timely fashion. See <u>Jablon v. Dean Witter & Co,</u> 614 F.2d 677, 682 (9th Cir. 1980).

There are <u>Critical Inquiry</u> as to the Implications of Our Laws promulgated to uphold the National Security Risk <u>Genocide & Nazi Persecution</u>, Immigration Law Deportation & Removal Grands: To Bar the Nigerian Officials.

The Holzman Amendment, 8 U.S.C. Sec. 1182(a)(3)(E) and 1227(a)(4)(D), means what It says, and what It says is that an Individual is <u>deportable</u> if he assisted In <u>Nazi</u> persecution.

A plain reading of the above principles Into this Instant Case, the United States Congress

-13-

does not run afoul of the Crime GENOCIDE.
Defined In part as follows:
The Convention on the Prevention and punishment of the Crime of Genocide to mean any of the following acts Committed with Intent to destroy, In whole or In part, a national, ethnical, racial or religious group, as such killing members of the group, Causing Serious bodily or mental harm to members of the group, deliberately Inflicting Condition of life Calculated to bring about Its Physical destruction in whole, or In part, preventing births, persons Committing genocide shall be punished, whether they are Constitutionally responsible rulers, public officials, or private Individual. The Genocide Convention Implementation Act of 1987, 18 U.S.C. Sec. 1091(a), Criminalizes acts of genocide without regards to acting under Color of Law. Acts Committed against the Awala's et al, Includes, Murder, Rape, torture, arbitrary Detention Committed in Case of harp intry, The affirmative duty of the Defendant U.S. Department of Treasury and Department of Defense was to Command the prevention of atrocities. Convention for the Amelioration of the Condition of the Wounded and Sick. Oct. 21, 1950 - be 2, 1956, Art. 3(1), 6.6 U.T. 3114. 75 U.N.T.S. 31. Thus, the Defendants breach the necessary Care under the law of war Codified In the Geneva Convention. They are obligated to adhere to the fundamental requirements-

-14-

"... the United States Treasury Department and must be greater for compelling reasons. For damages of death caused, committed deliberately and reasonable expectation that the death of the Awalas and other closely relatives would result, and exist the probability that defendants criminal acts will continue and a threat to Awala Survivors, heirs and beneficiaries, based upon sufficient ties to the United States, in determining the varied factor of the "GENOCIDE." A lump sum of $1 Billion U.S. Dollars:

| GROUPS | A (Awala) | B (Brown) | C (Hine) | D (Iwuene) | Average of Other G Families 1-2 | Groups A-G |
|---|---|---|---|---|---|---|
| 1. $3,000,000 | + 4,000,000 | + 5,000,000 | + 6,000,000 | + 7,000,000 | + 8,000,000 | = $33,000,000.00 |
| 2. $4,000,000 | + 6,000,000 | + 8,000,000 | + 10,000,000 | + 12,000,000 | + 14,000,000 | = $66,000,000.00 |
| 3. $5,000,000 | + 8,000,000 | + 11,000,000 | + 14,000,000 | + 17,000,000 | + 20,000,000 | = $75,000,000.00 |
| 4. $6,000,000 | + 7,000,000 | + 8,000,000 | + 9,000,000 | + 10,000,000 | + 11,000,000 | = $51,000,000.00 |
| 5. $7,000,000 | + 9,000,000 | + 11,000,000 | + 13,000,000 | + 15,000,000 | + 17,000,000 | = $81,000,000.00 |
| 6. $8,000,000 | + 11,000,000 | + 14,000,000 | + 17,000,000 | + 20,000,000 | + 23,000,000 | = $93,000,000.00 |
| 7. $9,000,000 | + 10,000,000 | + 11,000,000 | + 12,000,000 | + 13,000,000 | + 14,000,000 | = $69,000,000.00 |
| 8. $10,000,000 | + 12,000,000 | + 14,000,000 | + 16,000,000 | + 18,000,000 | + 20,000,000 | = $90,000,000.00 |
| 9. $11,000,000 | + 14,000,000 | + 17,000,000 | + 20,000,000 | + 23,000,000 | + 26,000,000 | = $111,000,000.00 |
| 10. $12,000,000 | + 13,000,000 | + 14,000,000 | + 15,000,000 | + 16,000,000 | + 17,000,000 | = $87,000,000.00 |
| 11. $13,000,000 | + 15,000,000 | + 17,000,000 | + 19,000,000 | + 21,000,000 | + 23,000,000 | = $108,000,000.00 |
| 12. $14,000,000 | + 17,000,000 | + 20,000,000 | + 23,000,000 | + 26,000,000 | + 29,000,000 | = $129,000,000.00 |
|  |  |  |  |  | Add | 1. $ 6,000,000.00 |

GRAND TOTAL ($1 Billion in U.S. Currencies) = $1 Billion

1. Attorney's fees. Awala vs. International Court of Justice, et al.

Putting it bluntly, the Court continued to be consonant with Awala, for fastidiousness in partiality which should not govern Judicial function.

"Justice must satisfy the appearance of Justice": The guiding consideration is that the administration of Justice should reasonably appear. Offutt v United States (1954) 348 US 11

These Judges must not regard their office as sacrosanct, or their robes as an impenetrable barrier to question and that the Judicial robe is not the hallowed vestment of Government divinity to Genocide. A Jury is also sought.

RELIEF SOUGHT

(1) That defendant must agree to pay the Plaintiff a lump sum of $1 Billion in Full settlement of the claims of AWALA's Genocide, thus the agreement must be embodied on exchange notes, adjudicated by the Court, to be compensated through Gbeke M. Awala, a payment and power to execute between the U.S. President and to be reported to the State Secretary to document the process, and funds will be distributed by me. That the agreement is final: (2) To estopp the killings (3) Bar All Nigerian Officials under 8 U.S.C. Sec. 1182 (a)(3)(E) and 1227(a)(4)(D), also, a denaturalization of some of them for assisting in genocide persecution of the Awalas. (2) I will not be compelled to board any U.S. Government Planes, Cars or Aircraft, but leave on foot from U.S. P. Company and be released immediately.

Submitted under 28 U.S.C. § 1746.

Dated: 6/17/08

Respectfully submitted
Gbeke M. Awala
82074-054 - P.C

-16-

# CERTIFICATE OF SERVICE

I certify that a True Copy as been served upon the following party:

Colm F. Connolly
U.S Attorney
1007 North Orange street, Suite 700
P.O Box 2046
Wilmington, DE 19899-0000

Submitted under 28 U.S.C Sec 1746.

Dated 6/17/08

Respectfully Submitted

_Awala_

Gbeke M. Awala
No. 82074-054
U.S.P Canaan
P.O. Box 300
Waymart, PA 18472

Addendum:

Awala v. International Court of Justice, et al

The defendants must undertake and comply to do Substantial Justice. See <u>Ware v. Hylton</u>, 3 U.S. 199, 3 Dallas 199, 1 L.Ed. 568. A British Creditor sought payment of an American Revolutionary War debt. The debtor argued that he had, under Virginia law, repaid the debt by complying with a State statute enacted during Revolutionary war that required debtors to repay money owed to British Creditors into a Virginia State funds. Id, 3 U.S. 199, 3 Dallas, at 220-221, 1 Led 568.

Sanctioned repayment did not count because a provision of the 1783 Paris Peace Treaty between Britain and the United States said that "the Creditors of either side should meet with no lawful impediments to the recovery of the full value... of all bona fide debts, therefore contracted," and that provision, the Creditor argued, effectually nullified the State Law. Id. 3 U.S. 199, 3 Dallas, at 203-204, 1 Led 568.

The Court agreed with the British Creditor, held Virginia statute invalid and found that the American debtor remained liable for the debt. Id 3 U.S. 199, 3 Dallas, at 285, 1 Led 568.

WHEREFORE, the Court need not pervert the claim U.S Government is liable for the debt.

Gbeke M. Awala
No. 82654-054
U.S.P. Canaan
P.O. Box 300
Waymart, PA 18472

Legal mail:

I AM AN INMATE
IN THE CUSTODY OF THE
BUREAU OF PRISONS

Sue L. Robinson
Chief Judge
U.S. District Court
District of Delaware
844 N. King Street, Lockbox 31
Wilmington, DE 19801-3570